PEOPLE OF the STATE OF NEW YORK, by Robert ABRAMS, Attorney General of the State of New York, Plaintiffs-Appellants,

v.

Eugene SENECI, Harold Wexler, Arnold Filner, Steve Donahue, Herb Donovan a/k/a Donovan H. Cunningham, Carl Hornung, Vincent Slevin, Joann Russell a/k/a Joann Incao, Georgette Reiser, Bernard Reiser, Barbara Seneci, Sheila Wexler, Scott Draper a/k/a Clinton S. Draper, Jr., Philip Wexler, Hollywood Video Cassette Routes, Inc., Video Hut Rentals, Inc., Day Video Cassette Factory, Inc., Minnie Ha-Ha Popkorn, Lite, Inc., Diamond Jim's Popcorn, etc., Inc., Poor Boy's Free Game, Inc., Defendants-Appellees.

No. 954, Docket 87–7042.

United States Court of Appeals, Second Circuit.

Argued March 24, 1987.

Decided May 5, 1987.

Jane M. Azia, Asst. Atty. Gen., State of N.Y., New York City, (Robert Abrams, Atty. Gen., O. Peter Sherwood, Sol. Gen., Lawrence S. Kahn, Deputy Sol. Gen., Albany, N.Y., Peter Bienstock, Mary Hilgeman, Asst. Attys. Gen., New York City, of counsel), for plaintiffs-appellants.

Christine E. Yaris (Gerald L. Shargel, Gino Josh Singer, New York City, of coun-

sel, Alan Futerfas, Law School intern, on the brief), for defendants-appellees.

Before KAUFMAN, PIERCE and PRATT, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The State of New York, suing, as *parens patriae*, appeals from an order of the United States District Court for the Southern District of New York (Duffy, J.) granting appellees' motion to dismiss its action for damages and injunctive relief pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and the New York Executive Law, § 63(12). We hold the appeal as to the claim for injunctive relief to be moot, and it is dismissed; the claim for damages was properly dismissed for lack of standing. We affirm the dismissal of the complaint.

## BACKGROUND

In April 1983, New York's Attorney General, pursuant to the authority of New York Executive Law § 63(12), commenced an action in New York State Supreme Court, New York County, against individual and corporate defendants engaged in the creation and marketing of fraudulent business opportunities in video games, vending machines and automobile batteries. The complaint sought to enjoin defendants from operating investment opportunity businesses and to exact restitution to the extent that any investors may have been injured.

For three years, this action—*State of New York v. Astro Shuttle Arcades, Inc.,* Index No. 41461/83—did not proceed to trial, and the defendants did not cease their fraudulent practices. On the contrary, Walter Seneci, Barbara Seneci and Harold Wexler created new corporate entities and branched into new business opportunity schemes, first offering entrepreneurial opportunities in popcorn and ice cream and then in video cassette and decal vending machines. Consequently, in May, 1985, the Attorney General attempted to amend the petition to include new corporate defendants and the activities conducted under their auspices. The Supreme Court, however, rejected the proposed amendment.

Having failed to amend the state complaint, the Attorney General instituted this action in the United States District Court for the Southern District of New York alleging that the defendants constituted an "enterprise" within the meaning of 18 U.S.C. § 1962(a)(b) and (c), and violated RICO and New York Executive Law § 63(12). Specifically, the complaint alleges that approximately one hundred consumers were victimized by the defendants' video game, vending machine and battery scams which are the subject of the state court action, while seventy-nine other consumers have complained to the Attorney General of defendants' subsequent fraudulent business opportunity schemes. Collectively, according to the complaint, these seventy-nine victims have been defrauded of more than one million dollars.

The complaint seeks an order directing payment of restitution and treble damages to the seventy-nine consumers not covered by the pending state court proceeding, and all consumers similarly situated but currently unknown to the Attorney General. Furthermore, the complaint seeks to enjoin the defendants from future racketeering practices and fraudulent acts.

In December, 1986, on the defendants' motion, the district court dismissed the Attorney General's complaint for lack of standing. The district court's entire disposition was a one-word endorsement citing *People of the State of Illinois v. Life of Mid-America Insurance Company,* 805 F.2d 763 (7th Cir.1986) (Illinois Attorney General lacks standing to recover damages under RICO for injury to eight consumers who purchased fraudulent tax shelters).

On January 7, 1987, the Attorney General filed a notice of appeal. Subsequently, the parties submitted briefs focusing on the question whether the state had standing to maintain an action for an order directing payment of treble damages to individual victims of the defendants' activities. On March 12, 1987, this court *sua sponte* ordered the filing of supplemental memoranda addressing the applicability of *Religious Technology Center v. Wollersheim,* 796 F.2d 1076 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987), to the right of the State of New

York to maintain an action under the civil RICO statute for an injunction.

Oral argument was heard on March 24. On April 3, while the case was *sub judice,* the New York Supreme Court rendered its decision in the pending state action. Finding that the testimony and documentary evidence adduced at trial overwhelmingly proved the fraudulent acts alleged, the court permanently enjoined the defendants from engaging in future fraudulent practices, and directed the payment of full restitution to all consumers injured by the defendants' conduct.

## DISCUSSION

### A. *The State's Claim For An Injunction*

■ By granting the Attorney General an order enjoining the defendants at any time in the future from engaging in fraudulent practices, the Supreme Court of New York has given the Attorney General all of the injunctive relief requested in the present case. We affirm, therefore, the dismissal of that part of the complaint that seeks injunctive relief on the grounds that it is moot.

As a result, we need not decide whether the Attorney General, acting as *parens patriae,* has standing to obtain an injunction, or whether RICO § 1964 authorizes any party other than the United States to obtain injunctive relief.

### B. *The State's Claim For Damages*

The only question remaining is whether the Attorney General, suing as *parens patriae,* may obtain under RICO an order directing payment of treble damages to its citizen-consumers injured by defendants' alleged illegalities.

At the outset, we emphasize that this question differs from that which would be presented if the Attorney General had sought treble-damage recovery for an injury to a quasi-sovereign interest of the state itself—for example, an injury to the general economy of the state. In that case, common law *parens patriae* standing would undoubtedly exist. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 607, 102 S.Ct. 3260, 3268, 73

L.Ed.2d 995 (1982). We would then be called on to decide whether the RICO statute authorized recovery for that harm. *See Life of Mid-America Insurance Company,* 805 F.2d at 763; *Hawaii v. Standard Oil Company of California,* 405 U.S. 251, 264, 92 S.Ct. 885, 892, 31 L.Ed.2d 184 (1972) (concerning identical issue in context of § 4 of the Clayton Act).

Here, in contrast, a monetary award is sought solely for injury to the business and property of the state's citizens. The issue before us, therefore, is whether the state has standing to sue in a representative capacity to recover those damages. We hold that it does not.

■ A state that sues as *parens patriae* must seek to redress an injury to an interest that is separate from the interests of particular individuals. *Snapp,* 458 U.S. at 607, 102 S.Ct. at 3268; *See also People of the State of New York by Abrams v. 11 Cornwell Co.,* 695 F.2d 34, 38 (2d Cir.1982). The state cannot merely litigate as a volunteer the personal claims of its competent citizens. *Pennsylvania v. New Jersey,* 426 U.S. 660, 665, 96 S.Ct. 2333, 2335, 49 L.Ed.2d 124 (1976). Where the complaint only seeks to recover money damages for injuries suffered by individuals, the award of money damages will not compensate the state for any harm done to its quasi-sovereign interests. Thus, the state as *parens patriae* lacks standing to prosecute such a suit. *See State of California v. Frito-Lay, Inc.,* 474 F.2d 774, 776–777 (9th Cir.1972), *cert. denied,* 412 U.S. 908, 93 S.Ct. 2291, 36 L.Ed.2d 974 (1973); *Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corporation,* 309 F.Supp. 1057, 1061 (E.D.Pa.1969); and *In re Motor Vehicle Air Pollution Control Equipment,* 52 F.R.D. 398, 401 (C.D.Cal. 1970).

■ To be sure, in this case the Attorney General alleges that the defendants' conduct has caused substantial injury to the integrity of the state's marketplace and the economic well-being of all its citizens. Since, however, the monetary relief sought by the complaint is not designed to compensate the state for those damages, the asserted presence of such damages cannot serve as the foundation for the state's au-

thority to act here as the representative of its citizens.

Accordingly, the judgment of the district court dismissing the complaint is affirmed.